CITY OF MIAMI v. CERTAIN LANDS UPON WHICH CITY OF MIAMI TAXES AND LIENS ARE DELINQUENT

171 So. 798.

·Opinion Filed January 8, 1937.

J. W. Watson, Jr., Abe Aronovitz, Wm. W. Charles and Franklin Parson, for Appellant;

Albert B. Bernstein, for Appellee.

DAVIS, J.—The foreclosure suit in the case at bar was commenced by the City of Miami, Florida, under Chapter 15038, Acts of 1931, which is a special statute applicable to cities and towns and authorizes municipalities to foreclose their own municipally held tax certificates and municipal assessment liens by an action *in rem* against the tax or assessment lien encumbered lands, without naming any parties defendant, and without serving any persons interested in the land as co-equal or superior lienors with formal

process of any kind, advising the latter that their own separate rights may be affected or cut off or destroyed in the litigation.

Provision is made by Chapter 15038, Acts of 1931, for the enforcement by proceedings in chancery of municipal tax liens and assessments only in the name of the particular city or town whose revenue is involved. There is nothing in the statute that contemplates in any respect that the proceeding shall be anything more than a proceeding *in rem* involving the taxed or assessed lands and liens and claims *subordinate* to the tax lien or assessments. Neither notice nor process is provided in the statute adapted to the bringing in of claimants who hold outstanding tax certificates of equal dignity with those of the complainant municipality proceeding under the statute. See: City of Coral Gables v. Certain Lands, 110 Fla. 189, 149 Sou. Rep. 36.

As has been pointed out, Chapter 15038, Acts 1931, creates a special *in rem* procedure, applicable to municipalities only, as complainants, and omits to provide for service of summons or constructive service of process against holders of tax certificates that are of *equal* dignity to those of the complainant. Hence the scope of the foreclosure is limited by the Act itself to foreclosing the owner only, and those whose claims are derived from, or subordinate to, the delinquent owner who has neglected to pay his taxes by reason whereof his lands are allowed to be foreclosed. So this is a proceeding *in rem* which can bind only the delinquent land as the *rem* and not those who hold outstanding tax certificates on it that are of equal dignity to the tax claims of the municipality foreclosing under said Chapter 15038.

Chapter 15038, Acts 1931, is designed and framed to provide an *in rem* procedure that according to its terms can

only be effective for adjudicating and cutting off the delinquent title holder, the mortgage holder, or other persons subordinately interested in the delinquent land itself, as distinguished from adverse tax certificate holders who have rights in the delinquent lands that are equal in dignity to the claims in suit. This is so because the Legislature has the constitutional power to provide a judicial process for cutting off, by an authorized *in rem* foreclosure against delinquent tax lands, the title holder, mortgagees and other persons holding subordinate proprietary or lien interest in delinquent tax lands, when such interests are admittedly inferior in dignity to the lien for taxes.

But the Legislature would have no right to thus impair and cut off adverse tax certificate lien holders possessing liens of equal dignity to those of the complainant municipal lienor that is authorized to prosecute *in rem* foreclosures under Chapter 15038, *supra,* only against the delinquent taxable interests in the tax encumbered lands involved.

The Chancellor correctly held in accordance with the precise limitations of the statute that since the subject of the suit was limited to a tax foreclosure against delinquent *lands,* it could not be extended to operate as an extinguishment of outstanding tax certificates on the same land that are in no respect themselves delinquent, but which are entitled to judicial protection and enforcement in appropriate proceedings of equal dignity to those of the municipality complainant under Chapter 15038.

The Garrison tax certificates involved in this case were issued in 1928 for the unpaid taxes of 1927. The nature of the contract made with the holder of those certificates is such that the state reserved the power to encumber the same taxed property *with equal, but not superior,* liens for unpaid subsequently assessed taxes.

Tax certificates on lands are designed to evidence mere statutory liens and are not, under the present statutes, made taxable property *quoad hoc.*

So *in rem* proceedings which are so contrived as to reach the *res* of particular delinquent tax *lands,* and subordinate encumbrances thereon, may appropriately adjudicate rights that are *inferior* to the lien of the taxes being foreclosed, but cannot, without being in violation of due process of law, be so enlarged and extended to bring in and destroy outstanding adverse tax certificates that are not inferior in dignity to the *res* of the suit, but are entitled to the protection of due process of law until they are either redeemed by some party interested in the lands, or are foreclosed simultaneously with other liens of equal dignity in some broader foreclosure proceedings *appropriate* to the adjudication of the *res* of equal tax liens, *inter sese,* as well as the statutory right of the municipality complainant to subject delinquent tax lands (the whole extent of the *res* dependent under Chapter 15038, Acts 1931) to the municipality's tax collecting processes as against subject matter (property rights) capable of being taxed by it.

The decree of the Chancellor which is consistent with the foregoing statement of law, should be affirmed.

WHITFIELD, C. J., and ELLIS, and TERRELL, J. J., concur.

BROWN and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—The City of Miami filed suit under provisions of Chapter 15038, Acts 1931, to foreclose certain tax liens for delinquent municipal taxes.

Section 4 of the involved Act provides:

"Jurisdiction of any of said lands and of all parties interested therein or having any lien thereon shall be obtained by publication of a notice to be issued as of course by the Clerk of the Circuit Court in which such bill is filed on the

request of complainant, once each week for not less than four consecutive weeks, directed to all persons and corporations interested in or having any lien or claim upon any of the lands described in said notice and said bill. Such notice shall describe the lands involved and the respective principal amounts sought to be recovered in such suit for taxes, tax certificates and/or special assessments on such respective parcels of land and requiring all such parties to appear and defend said suit on or before a rule day specified in said notice, which shall be not less than four weeks after the date of the first publication of such notice. Said notice may be in substantially the following form, with blanks appropriately filled in:"

Section 5 of the Act provides:

"Section 5. Each and every person and/or corporation interested in or having any lien upon any parcel of land described in the bill of complaint shall be deemed a party to said cause and may appear and defend said cause within the time specified in such notice. Any person or corporation not appearing and defending within such time shall be deemed to have confessed said bill, but the Court may in its discretion and for cause shown enlarge the time within which any such person may appear and defend said cause."

And the same section further provides:

"In such judgment or decree the court may, in its discretion, direct the payment of all unpaid State and County taxes and also all unpaid City or Town taxes and/or special assessments or installments thereof imposed or falling due since the institution of the suit, with the penalties and costs, out of the proceeds of such foreclosure sale, or it may order and direct such sale or sales to be made subject to such State and County and/or city or town taxes and/or special assessments. Any and all such conveyances by the

Special Master shall vest in the purchaser the fee simple title to the property so sold, subject only to such liens for State and County taxes or taxing districts whose liens are of equal dignity, and liens for municipal taxes and/or special assessments, or installments thereof, as are not directed by the decree of sale to be paid out of the proceeds of said sale."

In part the prayer of the bill of complaint was:

"1. That this Honorable Court take jurisdiction of this cause, the subject matter hereof, the lands described herein, and of all the parties interested in or having any lien upon any parcel of land described herein.

"2. That any person or corporation interested in or having any lien upon any parcel of land described herein who appears and defends this cause within the time prescribed by law, be required to answer the complainant's bill of complaint according to the rules and practice of this Honorable Court, but not under oath, answer under oath being hereby expressly waived," and

"7. That upon the sale of the several parcels of land separately, as hereinabove prayed, being made and upon confirmation of the same by this Court, that all parties interested therein or having any lien thereon, all parties who appear and defend this cause, and all persons claiming by, through or under them since the commencement of this suit, be forever barred and foreclosed of all their right, title, estate, equity and equity of redemption of, in and to the premises so sold, and that the purchaser of the premises at said sale be given full and complete possession thereof."

Pursuant to the statute and to the prayer of the bill of complaint a notice of the filing of the bill of complaint was filed and recorded in the office of the Clerk of the Circuit Court addressed: "To all Persons or Corporations in or

having any lien or claim upon any of the lands described herein below," giving notice of the filing of the bill of complaint, a description of the lands involved and the amount of taxes and costs and concluding with the order:

"You are hereby notified to appear and make your defenses to said bill of complaint on or before the 5th day of November, 1934, the same being a Rule Day in this Court, and if you fail to do so on or before said date, the bill will be taken as confessed by you and you will be barred from thereafter contesting said suit and said respective parcels of land will be sold by decree at said Court for non-payment of said taxes, special assessments, and interest and penalties thereon and the costs of this suit.

"In Witness Whereof, I have hereunto set my hand and affixed the official seal of said Court, this the 20th day of September, A. D. 1934."

It appears that the word "interested" should have been written between the word "corporation" and the word "in," but this becomes immaterial as the error was ignored.

In response to the notice Wesley E. Garrison, Inc., a Florida Corporation, responded and filed answer in which it alleged:

"2. That said Defendant, Wesley E. Garrison, Inc., is the owner and holder of Tax Sale Certificate No. 30039, dated June 4, 1928, in the principal sum of $105.48, for unpaid 1927 City of Miami taxes on Lot 24, Block 10, Spring Garden: and tax sale certificate No. 30040, dated June 4, 1928, in the principal sum of $118.11, for unpaid 1927, City of Miami taxes on Lot 25, Block 10 Spring Garden: and tax sale certificate No. 15260, dated August 6, 1928, in the principal sum of $106.47, covering lots 24 to 27, inclusive, Block 10 Spring Garden, which is a portion of the property described in the bill of complaint in this

cause; that there is due on said certificates the principal amount thereof together with the rate of interest prescribed by law; that said tax sale certificates are at least of equal dignity with the tax sale certificates held by plaintiff on said property and are of superior dignity to any municipal assessments which said City of Miami might hold on said property; that under the statutes and laws of the State of Florida, any sale which might be held in pursuance of the bill of complaint in the within cause would be subject in all respects to the lien of the tax sale certificates of this Defendant in this cause as hereinabove described; that under the statutes and laws of the State of Florida there can be no adjudication of the lien of the tax sale certificates held by this Defendant in the within cause, and this Defendant cannot be compelled to accept a pro rata share of the proceeds of said sale of the property, but said sale is in all respects subject to the tax sale certificates held by this defendant which will remain outstanding after any sale held in this cause, and that this Court has no jurisdiction to pass upon the lien of the tax sale certificates held by this Defendant in the within suit."

Wesley E. Garrison, Inc., also moved to dismiss the bill of complaint on the following grounds:

"1. Said bill does not set forth a cause of action against this defendant.

"2. There is no equity in the bill:

"3. Any sale in the within cause must be made subject to the Tax Sale Certificates held by this Defendant;

"4. The Tax Lien of this Defendant cannot be adjudicated in the within suit."

Complainant moved to strike a portion of the answer, as follows:

" 'Any sale which might be held in pursuance of the bill of complaint in the within cause would be subject in all respects to the lien of the tax sale certificates of this Defendant in this cause as hereinabove described; that under the statutes and, laws of the State of Florida, there can be no adjudication of the lien of the tax sale certificates held by this Defendant in the within cause, and this Defendant cannot be compelled to accept a pro rata share of the proceeds of said sale of the property, but said sale is in all respects subject to the tax sale certificates held by this Defendant which will remain outstanding after any sale held in this cause, and that this Court has no jurisdiction to pass upon the lien of the tax sale certificates held by this Defendant in the within suit' "and for grounds of the said motion to strike, assigns the following:

"1. The said portion of the Answer is vexations, frivolous and interposed merely for the purpose of delaying, annoying and harassing the Complainant in the progress of this cause.

"2. The said portion of the Answer does not present a proper and adequate defense to the allegations contained in the Bill of Complaint heretofore filed in the above cause.

"3. The said portion of the Answer contains improper conclusions of law in that it affirmatively appears in and by Section 15038, Acts of 1931, under which Complainant is proceeding, that the power to make private certificate holders a party to this type of foreclosure, and adjudicate their lien to the property sought to be foreclosed, is expressly granted."

Motion to dismiss and motion to strike were both denied. Special Master George Edward Holt, Esq., was appointed and reported. The pertinent part of the report is:

"There is one issue which has to be decided in this case. Plaintiff contends that under the provisions of the statute, parties claiming a lien by virtue of tax certificates theretofore issued against any property described in the bill, are properly deemed to be parties to the cause, and if such tax certificates owned by other parties are of equal dignity to those owned by the municipality, such shall share pro rata from the proceeds of the sale of the property."

"The defendant, Wesley E. Garrison, Inc., the owner and holder of the tax sale certificate No. 30039 in the principal sum of $105.48 for unpaid 1927 City of Miami taxes on Lot 24, Block 10, Spring Garden, also of tax sale certificate No. 30040, in the principal sum of $118.11 for unpaid 1927 City of Miami taxes on Lot 25, Block 10, Spring Garden, and tax sale certificate No. 15260 in the principal sum of $106.47, covering lots 24 to 27, inclusive, Block 10, Spring Garden, all of said lands being a portion of the property described in the bill, contends that said tax sale certificates so owned by it are at least of equal dignity with tax sale certificates held by the plaintiff, City of Miami, and which is admitted by the City of Miami, and that its tax sale certificates are superior in dignity to the municipal assessments owned by the City of Miami and described in the bill of complaint, and in view of this the defendant, Wesley F. Garrison, Inc., contends that this Court under the statute mentioned does not have jurisdiction of it by reason of its ownership of said tax sale certificates and that it is not properly a party defendant in this cause and that this court in this proceeding cannot adjudicate its rights and that the said defendant cannot be compelled to accept its pro rata share of the proceeds of the sale of said property and that any sale which may be ordered in this cause should be made subject to its rights by virtue of said tax sale

certificate. In addition to this contention as set forth in its answer, the defendant, Wesley E. Garrison, Inc., has incorporated a motion to dismiss based upon practically the same grounds as set forth above." "This is predicated entirely upon the construction of the statute mentioned, by the defendant, Wesley E. Garrison, Inc. In order to determine this issue it is necessary for the statute to be construed. At the outset, I must say that this, in so far as I have been able to find, is the first time that this statute has been construed with reference to the matters under discussion. The defendant relies almost entirely upon the following provision of the statute which is contained in Section 6, paragraph 6 of said statute, and which reads as follows:

" 'In such judgment or decree the court may, in its discretion, direct the payment of all unpaid State and County taxes, and also all unpaid city or town taxes and/or special assessments or installments thereof imposed or falling due since the institution of the suit, with the penalties and costs, out of the proceeds of such foreclosure sale, or it may order and direct such sale or sales to be made subject to such State and County and/or City or town taxes and/or special assessments. Any and all such conveyances by the special master shall vest in the purchaser the fee simple title to the property so sold, subject only to such liens for State and County taxes of taxing districts whose liens are of equal dignity and liens of municipal taxes and/or special assessments, or installments thereof, as are not directed by the decree of sale to be paid out of the proceeds of said sale.' "

"Counsel for the defendant argues, and with much ability, that such provision means only one thing; that the statute was passed at a time when the law of the State placed the holders of tax certificates of later origin in a superior po-

sition over holders of tax certificates of earlier origin. This being the theory obtaining in many states, that in so far as liens for taxes are concerned, 'the last shall be first and the first shall be last.'. On such a premise it is argued that since tax certificates of prior date, the law obtaining at the time the Act under discussion was such certificates were inferior, and naturally the holders thereof would be made parties defendant to the foreclosure of the later tax certificates and their interests adjudicated to be inferior by the holder of the certificates of later origin. (The certificates in the instant suit are all of later date than the certificates held by the defendant, Wesley E. Garrison, Inc.) Continuing, the proposition advanced by the defendant, it is contended that the quoted portion of the statute set forth above indicated clearly the intention of the Legislature in accordance with the contention of the defendant, that since the holders of the prior certificates were foreclosed as against the holders of the later certificates, any taxes which became due during the pendency of the suit would naturally occupy a better position in priority than that of the certificates being foreclosed by the complainant, and, therefore, the quoted provision gave the discretion unto the court to either direct in its final decree payment of all taxes becoming due during the pendency of the suit, first out of the proceeds of the foreclosure sale, or to order said property sold, subject to said taxes falling due during the progress of pendency of the suit." "However, it is admitted that the law of the State with reference to the priority of tax certificates has been drastically changed by the opinions of the Supreme Court of Florida, and we are all aware that the law with reference to this particular subject at the present time, is that all tax sale certificates regardless of the date of their issuance occupy the same status. However, I cannot under the law

emphasize one isolated portion of the statute and disregard its provisions as a whole. I am forbidden to do so by the elementary rules of statutory construction:

" 'The purpose of all rules or maxims as to the construction or interpretation of statutes is to discover the true intention of the law, they are useful only in cases of doubt; they are never to be used to create doubt but only to remove it, and cannot be invoked to defeat or destroy natural justice or substantial equities. For the purpose of construction resort may be had not only to the language and arrangement of the statute, but also to the intention of the Legislature, the object to be secured, and to such extrinsic matters as the circumstances attending its passage, the sense in which it was understood by contemporaries, and its relation to other laws. A rational rather than an arbitrary construction is to be accorded all statutes.' 59 C. J., page 943-4, Sec. 563.

" 'The intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from the conjecture *aliunde*. The current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.' 25 R. C. L., Sec. 217."

"In accordance with these fundamental principles we now proceed to an examination of the entire statute and attempt to ascertain therefrom the true intent of the legislature as expressed in the words of the statute as a whole."

"The first section authorizes any incorporated city or town in the State of Florida to foreclose upon any real estate upon which it holds liens, taxes, tax certificates and special assessments imposed by such municipality. The

general reference contained in this section as to the practice, pleading and procedure provides that the same shall be in substantial accordance with the practice, pleading and procedure for the foreclosure of mortgages of real estate, except as otherwise provided in the Act. The second section authorizes such suits be in the nature of proceedings *in rem* against the lands upon which said taxes or special assessments are a lien or liens, and contains the following words, which I deem important enough to quote: 'and it shall not be material that the ownership of said lands be correctly alleged in said proceedings or that parties having an interest or interests in or liens or claims upon said lands be made parties to such proceedings by name or description or be served with process therein, except as hereinafter provided.'

"The foregoing citation is made because of the reference therein concerning parties 'having interest or interests in or liens or claims upon said lands.' The remainder of the section being discussed and the next succeeding section contains provisions for procedure in which we are not interested at the present time. The following section authorizes that the suit shall be filed in Chancery in the County in which the city or town is located and contains the following express provision: 'At least thirty days prior to the filing of any such bill in chancery, written notice of intention to file the same shall be sent by registered mail to the last known address of the holder of the record title and to the holder of record of each mortgage or other lien, *except judgment liens,* upon each tract of land to be included in said bill in chancery * * *.'

"The same section contains the following: 'The complainant's counsel shall make diligent inquiry as to the address of the record title and holders of record liens *other*

*than judgments,* and the clerk of the circuit court shall mail by registered mail a copy of the notice hereinafter provided for, to such record owner and holders of record liens other than judgments at such last known address.' This section also contains the following: 'Jurisdiction of any of said lands and of all parties interested therein or having any lien thereon shall be obtained by publication of a notice * * *.' This same section also contains the following: '* * * directed to all persons (referring to the notice) and corporations interested in or having any lien or claim upon any of the lands described in said notice and said bill.'

"In the notice as proided for in the same section in the form as laid down by the statute appears the following: 'To all persons and corporations interested in or having any lien or claim upon any of the lands described herein * * *.'

"In the next succeeding section in which parties are designated defendant we find these express words: 'Each and every person and/or corporation interested in or having any lien upon any parcel of land described in the bill of complaint shall be deemed a part to said cause * * *.'

"After the statute makes provision for the sale and notice thereof, we come to the portion upon which the defendant relies which provides in substance as set forth above more explicitly, that the court may either direct the payment of all unpaid State and county taxes, all unpaid city or town and/or special assessments or installments thereof imposed or *falling* due since the institution of the suit out of the proceeds of foreclosure sale, or in its discretion the court may direct the sale to be subject to such taxes and assessments falling due during the pendency of such suit. The remaining provisions concern the distribution of the proceeds of sale, redemption and the option given to any municipality which may take advantage of the statute under consideration.

In the concluding section the legislature expressly called for a liberal construction to effectuate the purposes of the Act."

"In considering this piece of legslation it seems that the intent of the legislature as expressed by the words contained in the Act, was to provide some method whereby the cities and municipalities of the State of Florida could compel payment of taxes due them and to allow them to reduce the tax certificates and liens. which they held to ownership of the property, or payment of the same through this method of foreclosure. It can be recognized that during the past few years, an unprecedented situation arose, concerning the nonpayment of taxes in the State of Florida, municipalities in particular were more or less helpless against a situation over which they had no control. By vesting the cities of this State with the power and authority to foreclose tax certificates, the intent of the Legislature to my mind, was to aid them in the collection of their unpaid taxes; in order to do so it became necessary for a general act and one which could be taken advantage of by all of the municipalities of the State. It is needless here to review the critical financial conditions of the cities and towns of Florida at the time when this act was passed and at the time it became effective." (October, 1931).

"If the defendant's contention is to prevail, we must credit the legislature with the doing of a vain thing, that is to say—if the legislature intended, as counsel so strenuously argues, first, the holders of tax liens of equal dignity with the liens held by the municipality could not be made parties defendant under the Act, and their interests adjudicated; second, that the legislature intended the cities and towns to foreclose subject to liens of equal dignity and thereby have offered for sale property subject to outstanding tax liens held by persons in like position with defendant; if this be

true, then we must be compelled to say that the remedy which the legislature purported to give to the cities to aid in solving their financial problems, was not what the Act apparently meant, but one which placed the cities in such a position that the value of such a proceeding looking to the foreclosure of certificates owned by the city would be practically nothing."

"For this fundamental reason, I cannot concur with the propositions advanced by the defendant. In my opinion the contention of the defendant calls for a strained and unreasonable construction of the statute under consideration, which can not prevail."

"The defendant further contends that the statute does not contemplate adjudication of the rights of holders of other tax liens than those held by the city prosecuting such suit. The cited portions of the statute which I have deemed necessary to incorporate in this opinion conclusively show that by the use of the words concerning the interests of others in the property being foreclosed, under their ordinary and commonly accepted meaning and definition include holders of tax liens. There is no argument advanced that a tax certificate or a tax is not a lien, but on the other hand it is freely admitted by both sides. The defendant here comes into court claiming a lien upon the property involved, but says that such lien is superior to the lien of the city, when otherwise it would not be, simply because the city had chosen to use the statute for the enforcement of its lien. Throughout the whole statute general reference is made to all persons having any interest or lien upon the property in controversy and in addition thereto, by exclusion of one type of party, compels inclusion of all others. The legislature has expressly excluded judgment creditors, the holders of judgment liens against the land. Elementary

principles concerning construction of this type has long since been settled: 'It is the general rule of statutory construction that the express mention of one person, thing, or consequence is tantamount to an express exclusion of all others.' Black on Interpretation of Laws, page 146. And the converse is equally true: 'In accordance with the maxim *"expressio unius est exclusio alterius,"* where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned * * * ' 59 C. J., page 948, Sec. 582. Also: 'It is well settled that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted and excludes all other exceptions.' 25 R. C. L., Section 230.

"The result of defendant's contention if allowed to prevail, would automatically raise the status of its tax certificates to be superior to those certificates owned by complainant. The statute does not contemplate such a result. It does not seek to determine priorities between holders of liens. It only provides for adjudication of the same, through the method specified therein. It is the duty of the court to adjudge the claims of the parties specified."

"In view of the foregoing, it is therefore, my decision that the defense interposed by the defendant, Wesley E. Garrison, Inc., a Florida Corporation, in so far as the tax certificates held by the complainant are concerned, can not obtain."

"In so far as the special assessment liens held by complainant and foreclosure for which is prayed, I am bound by the law as it now exists, and hold that the tax certificates owned by the defendant, Wesley E. Garrison, Inc., are prior in dignity to said special assessment liens owned by complainant."

"The complainant introduced evidence to sustain the allegations of its bill with reference to attorney's fees, and I find that in view of the agreement existing between the complainant and its solicitors of record that the same does not constitute a legal basis for the awarding of attorney's fees in this suit."

"I, therefore, find and recommend unto the Court:

"1. That the tax certificate owned by complainant as described in the bill, and tax certificates owned by defendant, Wesley E. Garrison, Inc., are of equal dignity and said defendant and its liens and claims in and to said property are both properly before the court and said liens of both complainant and defendant are superior in dignity to all liens and claims of the remaining parties to this cause.

"2. That the special assessment liens of complainant encumbering the property described in the bill, are superior to claims and interests of all defendants in said cause, save and except the liens owned by the defendant, Wesley E. Garrison, Inc., by its tax certificates described in its answer, which said tax certificates are superior in dignity to said special assessment liens of complainant so mentioned."

Exceptions were filed to the Master's Report and same were sustained in an order as follows:

"This cause came on to be heard upon the exceptions of the defendant WESLEY E. GARRISON, INC., to the Special Master's Report and the Special Master's Findings heretofore filed herein and was argued by counsel for the respective parties; and it appearing unto the Court from an examination of Chapter 15038, of the Acts of 1931, under which the present suit was brought and especially from Section 5 thereof, that the Court is authorized in its Decree to direct the payment of all unpaid State and County taxes

and also all unpaid City or Town taxes and/or special assessments or installments thereof *imposed or falling due since the institution of the suit* out of the proceeds of the foreclosure sale, but that the Special Master's Deed, under said Chapter, shall be made subject to *such* liens for State and County taxes or taxing districts whose liens are of equal dignity, and liens for municipal taxes and/or special assessments, or installments thereof, as are not directed by the decree of sale to be paid out of the proceeds of said sale; and, it further appearing to the court that the Tax Sale Certificates held by the Defendant, WESLEY E. GARRISON, INC., are State and County tax sale certificates and City of Miami tax sale certificates, and are of equal dignity with the tax sale certificates held by the Plaintiff, CITY OF MIAMI, and are superior in dignity to the municipal assessment liens held by the plaintiff, and it still further appearing to the Court that under said Chapter 15038, of the Acts of 1931, the Court may, in its discretion, direct the payment of only such State and County taxes and of such city or town taxes and special assessments, or installments thereof, which fall due since the institution of the suit, and that the Court has no authority to direct that any City of Miami tax sale certificates or that any State and County tax sale certificates, which shall be outstanding when the suit is instituted, shall be paid out of the proceeds of the Master's Sale, but that any foreclosure sale should in all respects be made subject to any State and County taxes which have not become due since the institution of the suit and also subject to any City of Miami taxes which have not become due since the institution of the suit; and the Court being advised in the premises:

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED that the exceptions filed by the defendant WESLEY E. GAR-

RISON, INC., to that portion of the Master's Report and the Master's findings, which finds that the tax sale certificates of the Defendant, WESLEY E. GARRISON, INC., are properly before the Court and that the property should be offered for sale ostensibly to satisfy the amount due Plaintiff, CITY OF MIAMI, as well as the amount due to the Defendant WESLEY E. GARRISON, INC., for its tax sale certificates, be and the same are hereby sustained.

"It is further ORDERED, ADJUDGED AND DECREED that WESLEY E. GARRISON, INC., and the tax sale certificates held by the Defendant WESLEY E. GARRISON, INC., to-wit: Tax Sale Certificate No. 30039, dated June 4, 1928, in the principal sum of $105.48, for unpaid 1927, City of Miami taxes on Lot 24, Block 10, SPRING GARDEN: Tax Sale Certificate No. 30040, dated June 4, 1928, in the principal sum of $118.11, for unpaid 1927 City of Miami taxes on Lot 25, Block 10, SPRING GARDEN; and Tax Sale Certificate No. 15260, dated August 6, 1928, in the principal sum of $106.47, covering lots 24 to 27, inclusive, Block 10, SPRING GARDEN, be and the same are hereby dismissed from the bill of complaint and from this suit, and that the bill of complaint be, and the same is hereby dismissed at the cost of the Plaintiff, CITY OF MIAMI, as to the defendant, WESLEY E. GARRISON, INC., and as to the said tax sale certificates held by said Defendant.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said above described tax sale certificates held by the Defendant, WESLEY E. GARRISON, INC., shall in no way be affected by the within suit and the sale of the property described in the within cause shall be made subject to said tax sale certificates held by the Defendant, WESLEY E. GARRISON, INC., and to the lien thereof."

The construction of the statutes involved and the enun-

ciation of law embraced and stated in the Master's report were entirely in harmony with our views under the facts in this case and we adopt the same as the expression of the controlling legal principle to be determined in this case.

Under a different state of facts a different construction might follow.

It will be observed that the Garrison certificates were issued in 1928 for the unpaid taxes of 1927 and that instead of paying the taxes subsequently assessed against the respective parcels of property or buying the property in at subsequent tax sales or buying subsequent tax certificates, the holder of these certificates of 1928 sat supinely by and allowed subsequent tax liens to accrue and remain unpaid until this suit was filed in September, 1924, which was more than four years after the 1928 tax certificates had ripened into foreclosable liens. If the suit by the City had been instituted before the 1928 certificates had matured so as to be foreclosable, an entirely different question would be presented.

Those certificates of 1928 were acquired by the holder *cum onere,* that is, with full knowledge that subsequent tax liens of equal dignity would accrue and be foreclosable to enforce the payment of the tax and that in event of the foreclosure after maturity of the 1928 certificates the proceeds of sale under foreclosure could lawfully be applied *pro tanto* to all outstanding and unpaid tax liens of like dignity and all such liens be thereby discharged.

BROWN, J., concurs.