THE STATE *ex rel.* C. H. GROVES v. ROY CARUTHERS, as
Clerk of the Circuit Court of Sumter County

193 So. 849
Opinion Filed February 16, 1940

*S. J. Stiggins,* for Plaintiff in Error.

*P. W. Howell,* for Defendant in Error.

WHITFIELD, P. J.—In mandamus proceedings instituted in the Circuit Court it is in effect alleged:

"That the relator is the owner and holder of all unpaid Certificates of Indebtedness of Big Prairie Drain, a drainage district (under Chapter 11850, Acts of 1927) in Sumter County, Florida, payable only out of the drainage taxes of said district assessed and levied against the land in said district, and that the taxes, including drainage taxes, on the southwest quarter of southwest quarter of Section 1, Township 22, south, Range 23 east, situated in said drainage district, for the years 1928 and 1929 were not paid when due, but because delinquent; that said land was sold to the State of Florida and Tax Sale Certificate Number 1928 issued to the Treasurer of the State of

Florida on August 5th, 1929, for unpaid taxes for the year 1928, including said drainage taxes for said year."

That on July 26, 1937, under Chapter 18296, Acts of 1937, known as the Murphy Act, said tax sale certificate No. 1928, so sold to and then held by the State, was sold by the Clerk of the Circuit Court for $1.00 and costs, fees and legal charges, and that on September 4, 1939, upon application of the holders of said Tax Sale Certificate for a tax deed thereon, said Clerk sold said land under Chapter 17457, Acts of 1935, to said holders of said certificate for $111.10 and issued a tax deed thereon; that said sale price is $85.00 in excess of the amount required on and before the sale on September 4, 1939, to redeem said Tax Sale Certificate from the holders thereof plus the amounts paid by said holders to the Clerk of the Circuit Court in fees, costs of sale, redemption of other tax sale certificates on the same property with interest.

It is further alleged:

"That the total amount of said drainage tax and interest thereon against said land and payable under said tax sale certificate is: Principal $54.14, interest thereon $48.36, total $102.50; that the relator agrees to accept said sum of $85.00, less legal fees, in full payment of said drainage taxes on said land and said interest thereon and that said sum be turned into said Big Prairie Drain Tax Fund in the office of said Clerk in full payment of said drainage tax on said land and said interest thereon."

The alternative writ commands the respondent Clerk "to forthwith apply and credit said sum of $85.00 less legal fees, upon and in full payment and satisfaction of said drainage taxes of Big Prairie Drain and interest thereon under said tax sale certificate Number 1928 dated August 5th, 1929, and turn said sum, less legal fees, into the Big Prairie Drain Tax Fund in your office, for payment upon

said Certificates of Indebtedness of Big· Prairie Drain or" to show cause for not doing so.

Respondent Clerk of the Circuit Court by counsel filed a "return and answer" as follows:

"1. That any surplus that respondent holds is the amount over and above the amount necessary to redeem at the sale held according to law before the issuance of the Tax Deed to the persons bidding the highest at such sale, and that such surplus amount over and above the amount necessary to redeem said certificates should be paid the holders of the tax certificates.

"2. That when said certificates were sold in accordance with the provisions of the Murphy Act, it included all taxes assessed against said land which were embraced in the said certificates, and that it became and was necessary for any person claiming any interest in said certificates on account of any drainage taxes to then and there bid enough for said certificates to protect any interest he claimed in said certificate.

"3. That said petition alleges that petitioner is willing to accept said sum of $85.00 in settlement of the drainage· tax, but he is only entitled to a pro rata share of said amount that the amount of certificates of indebtedness held by him bear to the whole amount of certificate of indebtedness issued, and now outstanding, if he is in fact entitled to any part of the said surplus amount.

"4. That the respondent is only authorized to pay to the petitioner only his pro rata share of the amount received for the sale.of said Tax Certificate under the Murphy Law, which respondent is willing to do; but the petitioner is not entitled to any sum over and above such sum so received.

"5. That when H. S. Hazen and T. J. T. Watson purchased said Tax Certificate under the Murphy Law, they

became the owners of said certificate subject only to the right of redemption reserved to the owners of the land by the statute, and any sum realized from the sale of said certificates after that time belonged exclusively to them.

"WHEREFORE, having fully answered said Alternaitve Writ of Mandamus, the respondent prays that said Alternative Writ be quashed by the Court and that the Respondent be authorized to pay over the surplus to the owners of the said certificates."

Relator moved for a peremptory writ notwithstanding the answer and return.

The Court "ORDERED, ADJUDGED AND DECREED that the said Motion for a peremptory Writ of Mandamus be, and the same is hereby denied and the Petition filed herein dismissed at the cost of the petitioner."

Petitioner below took writ of error.

Chapter 11850, Acts of 1927, established "a drainage district to be known as Big Prairie Drain embracing and benefiting" described lands in Sumter County, and enacts:

"Sec. 4. That the said I. R. Legette, P. M. Cate, and R. L. Carpenter are hereby constituted a committee to construct said drains and ditches, and the County Commissioners of Sumter County shall assess and levy against the lands in said district in their county the amounts heretofore assessed by the Committee aforesaid against said lands, such levy to be made and assessed one-third of the total amount of such assessment in each year for three years, and at the request of said committee said County Commissioners of the said County shall also assess and levy against said lands for preliminary expenses of engineers, surveys and estimates, committee expenses, including attorney's fees, an additional sum not exceeding twenty-five cents per acre on the lands assessed for benefits, and said committee is hereby authorized to borrow in the name of said district such sums

of money as may be necessary to pay said preliminary expenses heretofore incurred or to be incurred and necessary to the construction of such drains and ditches, such sums so borrowed to be paid out of the special taxes hereby provided for such.

"Sec. 5. The amounts assessed against said lands are preliminary expenses and for construction of said ditches and drains shall constitute a lien upon said lands superior to all other liens except State, County and Special Road and Bridge Districts and Special Tax School Districts, and collection thereof shall be enforced by sale thereof for unpaid taxes at the same time and in the same manner as sales of lands for unpaid State and County taxes. Any taxpayer may at his option pay the total amount assessed against any parcel or parcels of land, at one time, and in case of such payment such lands shall not be further assessed for preliminary expenses or construction of such drains or ditches.

"Sec. 6. The said committee is hereby authorized to borrow in the name of the said district, money for the construction of said drains, ditches and levies, but only for a term not exceeding three years, and they shall in no case pay interest at a greater rate than eight per cent per annum; or the said committee may at their option issue certificates of indebtedness to contractors constructing such drains and ditches or levees and for other indebtedness or expenses, to bear interest at not exceeding eight per cent per annum. All money borrowed or certificates issued shall constitute an indebtedness and liability against the lands assessed, and shall be paid only out of taxes collected upon assessments as herein provided."

It is alleged that State tax sale certificate No. 1928, covering lands sold to the State and issued to the State Treasurer August 5, 1929, for unpaid (State and County) taxes

for the year 1928, included the drainage taxes on the land for the year 1928, and that such tax sale certificate so held by the State was purchased at a sale by the Clerk of the Circuit Court under Chapter 18296, Acts of 1937, the Murphy Act, and a tax deed was issued on such tax sale certificate September 4, 1939, after another sale was had under Chapter 17457, Acts of 1935. See Section 6, Chapter 18296. The amount paid for the land covered by the tax sale certificate when the sale was had for a tax deed to issue under the Acts of 1935, was $85.00 in excess of the amount required to pay for the certificate with costs and expenses of the sale under the Murphy Act.

The question to be determined is the disposition of the $85.00 now held by the Clerk of the Circuit Court.

In establishing the Big Prairie Drain district the statute provided that the assessments for drainage purposes upon lands in the district within Sumter County "shall constitute a lien upon said lands superior to all other liens except State, County and Special Road and Bridge Districts and Special Tax School Districts." Assuming that the statute in effect makes the drainage assessments a lien of equal dignity to taxes levied for State, County, Road and Bridge Districts and Special Tax School Districts, then such drainage *assessments* would have pro rate and not prior rights to payments over the mentioned *taxes*. The State, county and district *school* taxes are commanded by the constitution to be levied annually, and bond creditors have statutory contract rights in annual levies of ad valorem taxes in counties and in road and bridge districts. If such taxes are collectable they cannot legally be diverted from the purposes for which they are expressly imposed.

The Murphy Act does not attempt to provide for the distribution of amounts received by the Clerks of the Circuit Courts in excess of costs and expenses, etc., in making sales

or in issuing tax deeds. But as the tax and assessment liens in this case existed when the tax sale certificate was issued to the State and then sold under the Murphy Act and when the lands covered by such certificate was sold under Chapter 17457, Acts of 1935, in issuing a tax deed, the lien represented by the tax sale certificate attaches to the surplus over the amount paid for the certificates with costs and expenses, and such surplus should be applied pro rata to the tax and assessment liens covered by the tax sale certificate which became merged in the tax deed. The school taxes are levied under the constitution and other taxes are affected by contract rights. The rule of distribution of any surplus is afforded by Section 1004 (780) C. G. L. as amended in Chapter 15918, Acts of 1933. The holders of the tax sale certificate purchased at a sale under the Murphy Act are entitled to only the amount paid for the certificate with costs, charges and expenses, if the land covered by the certificate is sold on the application for a tax deed for an amount in excess of that due the certificate holder.

In this case the surplus amount held by the respondent Clark should be distributed in the same manner as when a sale of redemption is made under the statutes in force when Chapter 18296 was enacted. Under Chapter 17457, Acts of 1935, a sale of the lands covered by the tax sale certificate must be made before a tax deed can be issued, and the amount paid for the land so sold is to be first used to reimburse the holder of the certificate bought under the Murphy Act, and the remainder, if any, is to be distributed under Chapter 15918, Acts of 1933.

The Murphy Act applies only to tax sale certificates held by the State that were more than two years old when the Act, Chapter 18296, became effective June 9, 1937.

In this case the statute expressly requires the State tax sale certificates to include the delinquent Drain district taxes with the State and County delinquent taxes for the particular year. The $85.00 held by the clerk is not in excess of taxes due on the lands covered by the tax sale certificate, but is in excess of the amounts paid for the tax sale certificate at the sale under the Murphy Act with the costs and expenses of such sale.

The tax sale certificate is not now held by the State as in State *ex rel.* v. Culbreath, filed October 6, 1939, and Bice v. Haines City, filed January 16, 1940, but it was sold under the Murphy Act to private parties and not redeemed. Later a tax deed was obtained on the certificate from the Clerk of the Circuit Court after a sale of the land under Chapter 17457, Acts of 1935. The sale of the tax sale certificate under the Murphy Act carried the delinquent drainage taxes, but the tax deed had to be obtained by a compliance with Chapter 17457, Acts of 1935, which required another sale of the property covered by the tax certificate to the highest bidder. The land is now owned by private parties and is subject to drainage or other unpaid taxes not covered by the sale of the certificate, No. 1928, under the Murphy Act. The sale of the certificate under the Murphy Act and the sale for a tax deed under Chapter 17457, Acts of 1935, and the distribution of the surplus, if any, to the several interested tax units, cut off their rights in the tax sale certificate.

The final order dismissing the petition is affirmed.

TERRELL, C. J., BROWN, BUFORD and CHAPMAN, J. J., concur.

Justice THOMAS not participating as authorized by Sec-

tion 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J.—On the peculiar facts of this particular case, I think the conclusions reached are correct. I therefore concur.