85 So.2d 594 (1956)
Victor KOSTECOS, Appellant,
v.
William H. JOHNSON, Jr., Appellee.
Supreme Court of Florida. Special Division B.
February 3, 1956.
Rehearing Denied March 14, 1956.
*595 Clyde H. Wilson and Early & Early, Sarasota, for appellant.
Williams, Dart & Bell and W.T. Harrison, Jr., Sarasota, for appellee.
THORNAL, Justice.
Appellant Kostecos, who was plaintiff below, seeks reversal of a summary judgment in favor of appellee Johnson, who was defendant below, in an ejectment proceeding.
Appellant Kostecos bases his claim of title on a Master's Deed executed pursuant to a final decree in a foreclosure of delinquent drainage district taxes, under Chapter 298, Florida Statutes, F.S.A. Appellee Johnson bases his possession and claim of title on a deed from Sarasota County issued under the Veterans Homestead Act, Sections 253.351-253.356, Florida Statutes, F.S.A., the county having obtained its title pursuant to a foreclosure or so-called "quiet title" decree in a delinquent county tax proceeding under Chapter 22079, Laws of Florida 1943.
An understanding of the problem presented by the appeal requires a statement of events in chronological order. On December 29, 1943, Sarasota County filed a proceeding under Chapter 22079, Laws of Florida 1943, to quiet and confirm its title to the land in question because of delinquency in the payment of 1940 taxes. Almost ten months later on August 7, 1944, Pearce Drainage District, a drainage district organized under Chapter 298, Florida Statutes, F.S.A., filed its complaint to foreclose delinquent drainage district taxes against the same land. The drainage district proceeded under Section 298.75, Florida Statutes, F.S.A., and caused to be published in a local newspaper a notice to "all persons, firms or corporations having any interest in or lien upon the lands described in this notice," which included the land in dispute. The notice advised that suit had *596 been filed and fixed a return date. There was no "personal" service and the county did not participate in the case. On April 3, 1945, the final decree was entered in the county suit vesting the fee simple title in Sarasota County. Two months later on July 6, 1945, a final decree was entered in the drainage district suit. On January 17, 1948, a Special Master's Deed, pursuant to the drainage foreclosure final decree, was executed and delivered to the appellant Kostecos. The land apparently was unoccupied during most of this time but on July 17, 1953, Sarasota County executed the deed to appellee Johnson under the Veterans' Homestead Act which requires the veteran to occupy and develop the land for a period of three years before he receives a deed. See Section 253.351, Florida Statutes, F.S.A. It is to be assumed therefore that Johnson entered possession at least three years prior to July 17, 1953, and was in possession on August 21, 1951, when the complaint in ejectment in the appeal before us was filed.
The ejectment suit proceeded through various preliminary stages until May 14, 1954, when Johnson filed a motion for summary judgment relying upon the title of Sarasota County as conveyed to him by the deed of July 17, 1953, and contending that this title was paramount and superior to the claim of title asserted by appellant under his drainage district foreclosure Master's Deed.
Our consideration of the record on this appeal is complicated by the fact that in entering a summary judgment for the appellee, the trial judge took judicial notice of the records in the county delinquent tax proceeding and in the drainage district foreclosure proceeding. Apparently both parties agreed to this and the trial judge recited in his judgment that he had done so. Although no error is assigned on this proposition, both parties evidently agreeing that the procedure was correct, we are constrained to point out that the trial court is not authorized to take judicial notice of the records in a different case pending or disposed of in the same court but outside the record in the case before him. See Adams v. Adams, 126 Fla. 217, 170 So. 697, and Cassels v. Ideal Farms Drainage District, 156 Fla. 152, 23 So.2d 247. The case before us illustrates the sense of the rule.
The judgment recites that the trial judge took judicial notice of the entire contents of the records in the two delinquent tax cases. Undoubtedly he could conveniently call upon the office of the clerk of the court to bring the records before him and make them available for his examination in arriving at a judgment. Upon appeal, however, this court is not similarly situated and we are, therefore, obviously without the information contained in the two records in the Circuit Court of Sarasota County which may or may not have properly constituted the basis of the summary judgment that was entered because these records do not constitute a part of the record on appeal unless they were appropriately introduced in evidence either in the original or by certified copy and then included in the record sent to this court for consideration.
By directions to the clerk in the preparation of the record in this appeal, the appellant did have included in the record before us some parts of the records in the other two cases. The appellee did not object to this and we will, therefore, under the circumstances consider those portions of the records in these other two cases that have been so forwarded to this court. While we do not approve this procedure, we will treat the portions of the records sent to us as having been forwarded here by the consent of both parties. At best these are only partial records but we cannot go beyond them in considering this appeal.
We come to a consideration of the merits of the matter presented by the appeal. Appellant Kostecos contended in the lower court and seeks reversal on the proposition that although the county tax suit was filed first, the drainage district final decree was entered two months after the county tax final decree and, being a later acquired original title from a new and independent *597 source, should take priority over the earlier title acquired by the county likewise from a new and independent source. This position is grounded on the proposition that at the time the delinquent tax suits were instituted, county tax liens and drainage district tax liens were equal in dignity, and, when the county foreclosed its liens and obtained the title by the final decree, it did so in recognition of the equality of the drainage district liens. Further, that the county foreclosure decree eliminated the lien status of the county's position, changing it to a title status subject to the outstanding delinquent drainage district liens that were not satisfied. Appellant recognizes that, because the county liens were equal in dignity with the drainage liens, it could not have eliminated the county's interest while that interest was evidenced by delinquent tax liens only but asserts that when the county foreclosed its liens, it substituted therefor a title under Chapter 22079, Laws of Florida 1943. The county, for all practical purposes, so the appellant asserts, "foreclosed itself into a lawsuit" and thereby subordinated its title as distinguished from its equal lien status to the outstanding delinquent drainage liens.
In relying on the county's title the appellee seeks affirmance of the judgment in his favor with the contention that the county's title under the delinquent tax proceeding was a new and original title which could not be eliminated by the then pending drainage tax foreclosure suit and even if it could, appellee asserts the drainage tax suit proceeded without service of process of any kind or nature upon the county and, so far as the county was concerned, the final decree was obtained in contravention of the due process requirements of the state and federal Constitutions. He grounds this position on the proposition that the drainage lien foreclosure suit was brought particularly under Section 298.75, Florida Statutes, F.S.A., which makes no provision whatever for the service of process in any form or manner and, absent some requirement of due process in some form, the statute under which the drainage district proceeded is unconstitutional and any decree obtained in any such proceeding is necessarily without force and effect.
To bring the issue to a focal point, appellant replies that the drainage foreclosure proceeding was one in rem, against the land only and that service of process on persons interested in the land was unnecessary. In this view the land, being obviously within the jurisdiction of the court, is the res upon which the court acted in entering the decree and having jurisdiction of the res, the court was authorized to enter the decree so long as such decree was limited to the particular res (land) within the court's jurisdiction.
At the time of the two tax foreclosure suits, county tax liens and drainage district tax liens were of equal dignity. See Section 298.41, Florida Statutes, F.S.A.; Sections 19 and 21, Chapter 22079, Laws of Florida 1943, F.S.A. §§ 194.53, 194.55; State ex rel. Groves v. Caruthers, 141 Fla. 736, 193 So. 849. The case before us is not affected by the 1947 amendments to Chapter 22079, Laws of Florida 1943. See Chapter 24206, Laws of Florida 1947.
The instant appeal is governed by Section 194.53, Florida Statutes, F.S.A., Section 19, Chapter 22079, Laws of Florida 1943, which reads as follows:
"Upon the entry of the Chancery Decree provided in Section 36 of this Act, all rights, titles, interests in, or liens upon said property, except liens for general taxes, other than county tax liens, and municipal liens of equal dignity with county tax, shall be cut off and extinguished, and forever declared null and void, and the title to such lands when conveyed by the county shall be construed in all respects as a new, original title, subject only to such liens for general taxes of equal dignity to county liens for general taxes as are above excepted." (Emphasis ours.)
The effect of this act was that by the "quiet title proceeding" on delinquent county taxes, general tax liens of drainage districts and cities were not eliminated. *598 However, no procedure was at that time provided for enforcing such drainage tax liens against the county after it acquired its title, although by Chapter 18315, Laws of Florida 1937, Section 196.08, Florida Statutes, F.S.A., the Legislature authorized cities to make the state and its counties and other taxing units parties-defendant in municipal tax lien foreclosures. Such authority, however, has never been extended to drainage districts. On the contrary, by the emphasized language of Section 194.53, Florida Statutes, F.S.A., quoted above, it was obviously intended that upon acquiring title in its quiet title proceeding, the county could thereafter convey an entirely "new, original title" to a purchaser but after the quiet title decree, the county could not be summonsed into court to defend its title against a drainage district tax foreclosure, there being no legislative sanction at all for such procedure and absent legislative authorization a county shares the state's immunity from suit. Although Section 25 of Chapter 22079, Laws of Florida 1943, F.S.A. § 192.21 note, provides that nothing in that act should affect the lien or enforcement of taxes of any drainage district, neither said act nor any prior or other applicable act authorizes such enforcement against county-owned lands. Compare, as to State property, Section 192.27, Florida Statutes, F.S.A. So long as title remained in the county, the enforcement of liens of drainage districts remained in a state of suspension subject to being revitalized at such time as the county might dispose of its title to a person subject to suit. By the cited act the "equal dignity liens" were not cut off or "declared null and void" by the quiet title decree, but by operation of law resulting from the failure of the Legislature to provide a procedure for bringing the county into court and enforcement of such "equal dignity liens" of other taxing districts the right to foreclose them was suspended during county ownership of the "new and original title", except as to cities under Chapter 18315, supra.
It should be remembered that at this point we are not here dealing with private rights. We are concerned with the competitive interests of two taxing units whose rights, property, powers and functions are subject to legislative control to the extent that private rights are not involved. In accord with this view, therefore, the Pearce Drainage District could not bring Sarasota County into court in a contest between drainage tax liens and county tax liens where the county owned title because as we have pointed out above, there was no procedure for doing so. If the conclusion seems strange, it is only because of the fact that at that time the Legislature had failed to foresee and make provision for the solution to this particular problem. The problem was resolved later by Section 1 of Chapter 24206, Laws of Florida 1947, amending Section 194.53, Florida Statutes, F.S.A. This amendment expressly relegated municipal and drainage district liens to participation in the proceeds of any sale of county acquired lands. In other words, by the later statute, after the county acquired title, the liens of the other taxing districts were transferred from the land to the proceeds of the sale of the land. The rule which we have applied to the drainage district in the case before us was similarly applied to municipalities prior to the enactment of Chapter 18315, Laws of Florida 1937, authorizing municipalities to bring the state or its counties into municipal in rem tax foreclosures.
In City of Miami v. Certain Lands, etc., 126 Fla. 781, 171 So. 798, 799, we held that under Chapter 15038, Laws of Florida 1931, F.S.A. § 173.01 et seq., the municipal in rem foreclosure act did not authorize cities to have adjudicated in the in rem foreclosure proceeding the rights of holders of outstanding tax certificates of equal dignity with those of the municipality. The reasoning of the opinion in the case last cited is applicable to the settlement of the contest between Pearce Drainage District and Sarasota County in the case before us. From City of Miami v. Certain Lands, etc., supra, we quote the following:
"As has been pointed out, chapter 15038, Acts 1931, creates a special in *599 rem procedure, applicable to municipalities only, as complainants, and omits to provide for service of summons or constructive service of process against holders of tax certificates that are of equal dignity to those of the complainant. Hence the scope of the foreclosure is limited by the act itself to foreclosing the owner only, and those whose claims are derived from, or subordinate to, the delinquent owner who has neglected to pay his taxes by reason whereof his lands are allowed to be foreclosed. So this is a proceeding in rem which can bind only the delinquent land as the rem, and not those who hold outstanding tax certificates on it that are of equal dignity to the tax claims of the municipality foreclosing under said chapter 15038.
"Chapter 15038, Acts 1931, is designed and framed to provide an in rem procedure that according to its terms can only be effective for adjudicating and cutting off the delinquent title holder, the mortgage holder, or other persons subordinately interested in the delinquent land itself, as distinguished from adverse tax certificate holders who have rights in the delinquent lands that are equal in dignity to the claims in suit. This is so because the Legislature has the constitutional power to provide a judicial process for cutting off, by an authorized in rem foreclosure against delinquent tax lands, the title holder, mortgagees, and other persons holding subordinate proprietary or lien interest in delinquent tax lands, when such interests are admittedly inferior in dignity to the lien for taxes.
"But the Legislature would have no right to thus impair and cut off adverse tax certificate lienholders possessing liens of equal dignity to those of the complainant municipal lienor that is authorized to prosecute in rem foreclosures under chapter 15038, supra, only against the delinquent taxable interests in the tax encumbered lands involved." (Emphasis ours.)
It should be noted from the quotation that we took note of the proposition that the act under which the municipality operated made no provision for service of process in any form upon the holders of tax certificates of equal dignity with those of the complaining city. Similarly, the drainage district in rem foreclosure act, Section 298.75, Florida Statutes, F.S.A., makes no provision for the issuance and service of process in any form upon a county holding liens of equal dignity with the drainage district liens. We have not overlooked the contention of appellant that when the drainage district obtained its final decree, Sarasota County no longer held liens against the land but actually held a title which appellant contends was subordinate to the drainage district liens. However, the reason for the rule announced in City of Miami v. Certain Lands, etc., supra, is equally applicable where a county converts its liens into title and actually holds title to the land as the basic security for the payment of taxes due to the government by the former tax delinquent title holder. The equality of position held by the governmental unit (the county) is not destroyed by substituting title to the land itself for the liens it formerly held absent legislative action so providing. No such action was here apparent.
Under the doctrine of Smith v. City of Arcadia, 147 Fla. 375, 2 So.2d 725, 135 A.L.R. 1458, the appellant contends for the so-called "last deed rule;" that is, that he received his new and original title subsequent to the county and therefore when his subsequently acquired deed was issued, he took a brand new title that eliminated the previously obtained county title.
A casual examination of Smith v. City of Arcadia, supra, might suggest support for appellant's position. However, a more cautious study will reveal that it was a contest between a city tax foreclosure deed and a subsequently acquired state and county tax deed obtained in accordance with statutory administrative procedures then in vogue. This court properly held that the city in its foreclosure proceeding had failed to make the state and county parties-defendant *600 (as it could have done under Chapter 18315, Laws of Florida 1937) and on the contrary the city had due notice of the application for state and county tax deed and failed to redeem. Consequently, the subsequently obtained tax deed took precedence. In the instant appeal, the situation is entirely dissimilar. Here the county was not made and could not be made a party to the drainage district tax foreclosure for the reasons above mentioned and under the act, pursuant to which the county acquired title, it obtained a title in due recognition of the outstanding drainage district tax but free from enforcement thereof until the county conveyed its title to a purchaser subject to suit by the drainage district. The drainage district suit was concluded and the Master's Deed issued to appellant long prior to the ultimate conveyance by the county to the appellee Johnson.
Appellant also relies on Trustees of Internal Improvement Fund v. Southwest Tampa Storm Sewer Drainage District, 5 Cir., 142 F.2d 637, certiorari denied 323 U.S. 732, 65 S.Ct. 69, 89 L.Ed. 587, to support its contention that when Sarasota County obtained its title by the "quiet title" decree, it thereby lost its liens and automatically elevated the drainage district liens to first liens against the lands. In a measure the contention is sound but it does not lead to the conclusion that the subsequently entered drainage district final decree eradicated Sarasota County's title. In the case last cited the Trustees of Internal Improvement Fund had lost their title as the result of the exercise of the sovereign power of eminent domain by the Federal Government and the contest was not over title to the land but over the proceeds of the court deposit evidencing the amount paid by the Federal Government for the land. It was not an effort to establish a title to the land superior to the state. The rule of this case might apply if the cause before us were a contest over the proceeds of the purchase price paid by Johnson to Sarasota County, but this is not the case.
In summary, our conclusion is that under the statutes in force at the time the county obtained its quiet title decree and the drainage district obtained its foreclosure decree, the county converted its lien into a title which was taken in recognition of the outstanding delinquent drainage district liens but not subject to enforcement of the liens in an action against the county itself. When the county took title, enforcement of the drainage district liens was placed in a state of suspension until the county disposed of the title, whereupon the drainage district could then enforce its liens against the purchaser from the county. Ruling as we do, it becomes unnecessary to pass on the constitutionality of Section 298.75, Florida Statutes, F.S.A., as contended for by appellee. The courts will not subject a legislative enactment to the test of the organic law unless a correct determination of the particular case makes it essential.
Having determined that the trial court ruled correctly, the judgment appealed from is
Affirmed.
DREW, C.J., O'CONNELL, J., and CRAWFORD, Associate Justice, concur.