Dear Ms. Holley and Ms. Lander:
You have asked substantially the following question:
What procedure is available for the disposition of tax certificates held by a private individual on real property to which the county acquired title subsequent to the issuance of the tax certificates?
You state that the county has acquired title to real property subject to tax certificates held by private individuals. There appears to be a discrepancy in the time frame the tax certificates may have been issued.[1] However, for purposes of this discussion, it is assumed that the tax certificates have been issued prior to the county obtaining title to the property. It is recognized that any attempt to impose taxes on property once the county has assumed ownership would appear to be ineffective, as county property is immune from taxation.[2] Thus, the primary issue addressed is how to redeem tax certificates that were not redeemed or extinguished at the time title was transferred to the county.[3]
Section 197.432, Florida Statutes, sets forth the procedure for the sale of tax certificates. Each sold certificate is "struck off to the person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest, not in excess of the maximum rate of interest allowed by this chapter."[4] Section 197.432(2), Florida Statutes, provides that the "lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in this chapter."[5] Thus, the statute recognizes that Chapter 197, Florida Statutes, provides the exclusive method for enforcing the lien created by the sale of tax certificates.
Some protection is afforded governmental units who acquire fee title to property in section 196.295, Florida Statutes, which provides:
"(1) In the event fee title to property is acquired between January 1 and November 1 of any year by a governmental unit exempt under this chapter by any means except condemnation or is acquired by any means except condemnation for use exclusively for federal, state, county, or municipal purposes, the taxpayer shall be required to place in escrow with the county tax collector an amount equal to the current taxes prorated to the date of transfer of title, based upon the current assessment and millage rates on the land involved. This fund shall be used to pay any ad valorem taxes due, and the remainder of taxes which would otherwise have been due for that current year shall stand canceled.
(2) In the event fee title to property is acquired by a governmental unit exempt under this chapter by any means except condemnation or is acquired by any means except condemnation for use exclusively for federal, state, county, or municipal purposes, the taxpayer is required to pay all taxes due from prior years."[6]
Section 197.122(1), Florida Statutes, recognizes that all taxes imposed pursuant to the State Constitution and laws of this state are a first lien, superior to all other liens, remaining in full force until discharged by payment or until barred under Chapter 95, Florida Statutes. In issuing a tax certificate, however, the taxes are paid and the resulting lien becomes a first lien superior to all others and may be held by someone other than the county.[7] While the county cites to several Attorney General Opinions for the proposition that property owned by the county is not subject to sale to satisfy previously assessed taxes, all of the opinions cited involved liens held by the county, state, or other local government and would not be applicable to the instant situation.[8]
While there is no specific statutory direction regarding the cancellation or redemption of outstanding tax certificates on property which the county purchases, the Legislature has recognized the separate treatment of tax certificates as they relate to land that comes into possession of the state. Section 270.18, Florida Statutes, provides:
"Reinstatement of title in the state or its agency shall, by foreclosure or otherwise, operate to extinguish all liens for all taxes or assessments to which the lands would not have been subject had the title been in the state or its agency; provided, however, that any taxcertificate or tax deed issued upon such lands or other property in thehands of a person, private firm or private corporation, shall representa valid obligation against the said lands, and said certificate may beredeemed and paid for by the said state or its agency as provided by lawin other cases for the purchase or redemption of tax certificates, and in case of deed, by paying to the holder the amount paid by him or her, plus interest at 6 percent per annum since the date of the said deed." (e.s.)
Nothing in the foregoing statutes or the cited opinions would support finding that the transfer of title to the county operates to cancel an outstanding tax certificate held by a private individual. Rather, the lien created by the privately held tax certificate is against the property and in no respect is itself delinquent, remaining with the property despite the transfer of ownership to the county.[9]
In the event an individual has purchased the tax certificate on a parcel and, therefore, paid the taxes on the property for a specific period, thereby acquiring a lien against the property, the county should consider any outstanding tax certificates when negotiating the purchase of such encumbered property. While the taxpayer owner of property is obligated to pay all outstanding taxes on property that is transferred to a governmental entity, there is no similar obligation for outstanding tax certificates, so it would be advisable for the county to arrange for the payment of outstanding tax certificates from the proceeds of the sale.
The county asserts that the tax certificates at issue here would be void by virtue of the ownership of the property being transferred to the county. Sections 197.443(1)(f) and 197.444(1), Florida Statutes, provide means to cancel or correct void tax certificates. A void tax certificate, however, is one that is "not authorized by law, where the property is not subject to the tax assessed, or where the tax roll is illegal due to some affirmative wrongdoing by the taxing official."[10] Since the property was in private ownership at the time the tax certificate was issued, it would not appear that the property would have been exempt or immune from taxation at that time, nor has there been an assertion that the tax certificates were illegally issued.
You have suggested that the holding in Kostecos v. Johnson[11]
precludes the sale of county-owned property to satisfy previously imposed tax liens. In Kostecos, however, the Court was considering the competitive interests of two taxing units and the resulting tax liens, specifically noting that it was not dealing with private rights.[12]
As noted above, when a tax certificate is issued, the taxes are paid and the individual holding the tax certificate has a claim against the property.
Should the tax certificate be outstanding, section 197.502(1), Florida Statutes, provides:
"The holder of any tax certificate, other than the county, at any time after 2 years have elapsed since April 1 of the year of issuance of the tax certificate and before the expiration of 7 years from the date of issuance, may file the certificate and an application for a tax deed with the tax collector of the county where the lands described in the certificate are located. The application may be made on the entire parcel of property or any part thereof which is capable of being readily separated from the whole. The tax collector shall be allowed a tax deed application fee of $75."
Upon payment of the appropriate fees and outstanding taxes by the applicant,[13] the tax collector is required to deliver to the clerk of the circuit court a statement that all outstanding tax certificates have been paid, all appropriate fees have been deposited, and that individuals specified in section 197.502(4), Florida Statutes, must be notified prior to sale of the property. Among those enumerated in section 197.502(4), Florida Statutes, is "[a]ny legal titleholder of record if the address of the owner appears on the record of conveyance of the lands to the owner."[14] Thus, even if the county was not previously aware of the outstanding tax certificate, the county would be on notice that the property it now possesses would be subject to sale.
The tax collector's powers, like those of other constitutional county officers, are limited to those powers which have been expressly granted or are clearly necessary to give meaning and effect to those powers which have been expressly granted.[15] Further, where the Legislature has directed how a thing is to be done, it operates as a prohibition against its being done in any other manner.[16] In this instance, absent legislative direction otherwise, the tax collector must follow the procedures set forth in Chapter 197, Florida Statutes, to redeem outstanding tax certificates on land that has been acquired by the county.
Accordingly, it is my opinion that tax certificates held by a private individual remain valid and enforceable on land that has been obtained by the county subsequent to the issuance of the certificate, and that Chapter 197, Florida Statutes, provides the means for the tax collector to redeem or cancel such tax certificates.
Sincerely,
Bill McCollum Attorney General
BM/tals
[1] The tax collector poses the situation where the tax certificate is outstanding at the time of transfer of title by warranty deed to the county. The county indicates that property with unpaid ad valorem taxes has been acquired by the county with the tax certificate issued subsequent to the county's taking title.
[2] See Markham v. Broward County, 825 So. 2d 472, 474 (Fla. 4th DCA 2002), citing Canaveral Port Authority v. Department of Revenue, 690 So. 2d 1226 (Fla. 1996) and Article VIII, s. 1, Fla. Const. 
[3] Ms. Holley indicates that she has been advised by the Department of Revenue that the appropriate alternative to payment of the taxes and redemption of the tax certificate from a tax deed sale is litigation.
[4] Section 197.432(5), Fla. Stat.
[5] See also s. 197.122(2), Fla. Stat., stating that "[a] lien created through the sale of a tax certificate may not be foreclosed or enforced in any manner except as prescribed in this chapter."
[6] See also ss. 196.28, Fla. Stat. (county authorized to cancel and discharge any and all liens for taxes held by the county or state on lands conveyed to a governmental subdivision for road purposes, defense purposes, recreation, reforestation or other public use), and 196.29, Fla. Stat. (cancelling certain taxes on real property acquired by a county, school board, charter school governing board, or community college district board of trustees for the year in which title is acquired).
[7] Section 197.102(3), Fla. Stat., defines "[t]ax certificate" as "a legal document, representing unpaid delinquent real property taxes, non-ad valorem assessments, including special assessments, interest, and related costs and charges, issued in accordance with this chapter against a specific parcel of real property and becoming a first lien thereon, superior to all other liens, except as provided by s.197.573(2)."
[8] Ops. Att'y Gen. Fla. 74-199 (1974) (county held tax lien remains valid, but not enforceable by foreclosure or other court procedure, so long as land is held by a municipality and used for a municipal or public purpose); 73-183 (1973) (county authorized to cancel or discharge tax liens held by the county); 75-255 (1975) (taxes attributable to the seller, prorated to the date of escrow, must be escrowed, with remaining portion attributable to an exempt or immune governmental entity canceled).
[9] See City of Miami v. Certain Lands upon which City of Miami Taxesand Liens are Delinquent, 171 So. 798, 799 (Fla. 1937) (Legislature lacks authority to cut off adverse tax certificate lien holders possessing liens of equal dignity to municipal lien holder; foreclosure of lien held by a municipality did not operate to extinguish outstanding tax certificates on same land issued to holder for prior unpaid taxes).
[10] Utility Corporation v. Maxwell, 189 So. 2d 643, 646 (Fla. 4th DCA 1966).
[11] 85 So. 2d 594 (Fla. 1956).
[12] Id. at 598.
[13] See s. 197.502(2), Fla. Stat.
[14] Section 197.502(4)(a), Fla. Stat.
[15] See Gessner v. Del-Air Corporation, 17 So. 2d 522 (Fla. 1944);White v. Crandon, 156 So. 303 (Fla. 1934); and Harvey v. Board of PublicInstruction, 133 So. 868 (Fla. 1931).
[16] See Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952); and Thayer v.State, 335 So. 2d 815, 817 (Fla. 1976).