NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


VILLAGES OF AVIGNON                )
COMMUNITY DEVELOPMENT               )
DISTRICT,                          )
                                   )
          Appellant,               )
                                   )
v.                                 )          Case No. 2D16-1048
                                   )
KEN BURTON, JR., MANATEE           )
COUNTY TAX COLLECTOR,              )
                                   )
          Appellee.                )
_____  )

Opinion filed March 17, 2017.

Appeal from the Circuit Court for Manatee
County; John F. Lakin, Judge.

Brian A. Crumbaker, Gary V. Perko, and
Mohammad O. Jazil of Hopping Green &
Sams, P.A., Tallahassee; and Scott D. Clark
and Mitchell E. Albaugh of Clark & Albaugh,
LLP, Winter Park, for Appellant.

Janelle L. Esposito, Patrick G. Bryant, and
Matthew E. Bobulsky of Esposito Law
Group, P.A., Bradenton, for Appellee.


VILLANTI, Chief Judge.

Villages of Avignon Community Development District (the Villages) seeks

review of the final declaratory judgment entered in favor of Ken Burton, Jr., Manatee

County Tax Collector, in an action to determine the priority of competing liens held by the Villages and Manatee County against the same real property. The parties agreed on the facts, and the case was decided on the Villages' motion for judgment on the pleadings and the Tax Collector's motion for summary judgment. After extensive argument, the trial court held that the ad valorem tax liens held by the County were "superior" to the assessment liens held by the Villages, and it authorized the Tax Collector to issue tax certificates that would be sold subject to the Villages' assessment liens. After a thorough review of the record and the supplemental briefs filed by the parties, and after considering the points raised at oral argument, we affirm, but we write to certify a question of great public importance to the supreme court.

As noted, the facts are not in dispute and center on three parcels of real property in Manatee County. The County assessed ad valorem property taxes against these three parcels as authorized by article VII, section 9(a), of the Florida Constitution, which provides that counties and municipalities shall levy ad valorem taxes. Section 197.122(1), Florida Statutes (2015), which codifies and effectuates this constitutional provision, provides, in pertinent part:

> All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred under chapter 95.

Because the ad valorem taxes for these parcels are unpaid, the County requested that the Tax Collector issue tax certificates for the parcels, to be sold pursuant to section 197.432(1).

However, the parcels at issue are also part of the Villages of Avignon Community Development District. As a community development district (CDD), the Villages is authorized by statute to levy and collect special assessments for the development and maintenance of CDD facilities. See § 190.021(2), Fla. Stat. (2015). The Villages levied assessments on these same three parcels, those assessments were unpaid, and the Villages recorded liens for the unpaid assessments against the parcels. As was its prerogative, when the assessments remained unpaid, the Villages filed a foreclosure action against the properties, and it took title to the properties subject to the County's tax liens.

The dispute underlying this case arose when the County informed the Villages of its intent to have the Tax Collector issue tax certificates for the parcels in question to satisfy the County's liens. The Villages took the position that the Tax Collector could not legally issue tax certificates because doing so would impair the status of the Villages' assessment liens, which it argued were coequal with the County's tax liens under section 190.021(9). The Villages claimed that because its assessment liens were coequal with the County's tax liens, the Tax Collector could not issue tax certificates while the Villages owns the parcels because to do so would improperly "wipe out" its coequal assessment liens. In response to this dispute between the Villages and the County, the Tax Collector filed a declaratory judgment action to resolve the question of the relative priority of the liens and to obtain a determination of its obligations under chapter 197. In its final judgment, the trial court declared that the Tax Collector could issue tax certificates but that the certificates would be sold subject to the Villages' liens. The Villages has appealed this ruling.

As an initial matter, we agree with the Villages that the trial court's decision regarding the relative priority of the parties' liens is incorrect, but we conclude that the error is a semantic, rather than substantive, one. In our view, the plain language of section 190.021(9) could not express a clearer intent. That statute plainly says that CDD liens are "coequal with the lien of state, county, municipal, and school board taxes." § 190.021(9). Therefore, the trial court's ruling that the County's tax liens were "superior" to the Villages' assessment liens is simply incorrect. Further, case law that determined the priority of these types of liens based on the relative "dignity" arising from their source, i.e., either constitutional or statutory, is no longer good law in light of the 1999 enactment of section 190.021(9). Therefore, to the extent that the trial court concluded that the County's tax liens were <u>superior</u> to the Villages' assessment liens, the trial court's ruling was incorrect.

However, that decision does not fully resolve the matter before this court. In both its answer and affirmative defenses and in its motion for judgment on the pleadings, the Villages argued that the coequal status of its lien meant that the County was prohibited from having the Tax Collector issue tax certificates to satisfy its liens until such time as the Villages conveyed the property to "a non-exempt entity or entities," and it affirmatively sought a ruling forbidding the issuance of the tax certificates. In making this argument, the Villages relied on the supreme court's decision in <u>Kostecos v. Johnson</u>, 85 So. 2d 594 (Fla. 1956), which dealt with coequal liens held by a county and a drainage district. As explained below, we do not believe <u>Kostecos</u> requires the result advocated by the Villages, and we question whether the "construct" set forth in <u>Kostecos</u> remains good law today.

- 4 -

In Kostecos, Sarasota County had a lien against certain property for unpaid county taxes, and the Pearce Drainage District had a coequal lien against the same property for unpaid drainage district taxes. Id. at 595, 597. The county foreclosed first on its tax liens and issued a Veterans' Homestead Act deed to Johnson. Id. at 595. The drainage district foreclosed on its lien shortly thereafter (without making the county a party), and the court issued a Special Master's deed to Kostecos. Id. at 596. Kostecos then sued Johnson for ejectment, claiming that his later deed was superior to Johnson's earlier deed. Id.

Kostecos argued that by foreclosing first, the county had traded its lien for a deed, making its deed subject to the drainage district's lien and making his deed from the drainage district lien proceedings superior to the earlier deed. Id. at 596-97. But the supreme court disagreed. The supreme court held that when the county converted its liens into title, it was simply holding title as security for the payment of taxes due to the government. Id. at 599. Therefore, "[t]he equality of position held by the governmental unit (the county) is not destroyed by substituting title to the land itself for the liens it formerly held absent legislative action so providing." Id. Instead, both liens were maintained and would have to be satisfied by the subsequent purchasers. To the extent that the court determined that the drainage district's lien was held in suspension while the county owned the property, it did so in large part because "no procedure was at that time provided for enforcing such drainage tax liens against the county after it acquired its title." Id. at 598. Under the statutory scheme then in effect, the drainage district simply had no ability to enforce its liens against the county. So to avoid the elimination of the drainage district's coequal lien, the supreme court created this construct of a

suspended lien in an effort to remedy "the failure of the Legislature to provide a procedure for bringing the county into court and enforcement of such 'equal dignity liens' of other taxing districts."  Id. at 598.

Relying on Kostecos in the trial court, the Villages advocated for applying its suspended lien "construct" to the facts of this case, which would result in the County's liens remaining in suspension until such time as the Villages sells the parcels to third parties.  However, we question whether Kostecos remains good law inasmuch as the legal landscape has changed significantly since 1956, thereby altering the rights of the parties before this court.  Therefore, we do not agree that Kostecos is determinative of this issue for three reasons.

First, unlike the drainage district in Kostecos, the Villages had the statutory authority to join the County in an enforcement proceeding relating to its assessment liens.  Under section 173.15, Florida Statutes (2015), the Villages could have made the County a party to its assessment lien foreclosure action, and the issue regarding the priority and satisfaction of the competing coequal liens could have been resolved before the Villages took title to the parcels.  The Villages' decision to forego this opportunity does not mean that it can now strategically hold the County's liens hostage until such time as the Villages decides to sell the parcels.  And while we recognize that this resolution may force the Villages to satisfy the County's tax liens if it wishes to continue to hold title to the parcels, we note that this is a problem of the Villages' own making.

Second, several statutes first enacted after Kostecos was decided seem to evidence the legislature's intent to remedy the problem that the Kostecos construct

was created to address.  For example, section 197.552, enacted in 1972, specifically

provides that an existing CDD lien will survive the issuance of a tax certificate:

> Except as specifically provided in this chapter, no right,
> interest, restriction, or other covenant shall survive the
> issuance of a tax deed, except that a lien of record held by a
> municipal or county governmental unit, special district, or
> community development district, when such lien is not
> satisfied as of the disbursement of proceeds of sale under
> the provisions of s. 197.582, shall survive the issuance of a
> tax deed.

(Emphasis added.)[1]  Hence, the legislature clearly contemplated that buyers of tax

certificates would hold those certificates subject to the CDD assessment liens—not that

counties were barred from selling tax certificates by the existence of coequal CDD liens.

Similarly, section 190.024 provides that "[a] sale of any of the real property

within the [CDD] for state and county or other taxes shall not operate to relieve or

release the property so sold from the lien for subsequent district taxes or installments of

district taxes, which lien may be enforced against such property as though no such sale

thereof had been made."  Thus, the legislature clearly anticipated the issuance of tax

certificates despite the existence of CDD assessment liens on the same parcels, and it

sought to preserve the right of CDDs to collect on their liens despite the issuance of

such certificates.  If we were to continue to apply the Kostecos construct, it would

render sections 197.552 and 190.024 meaningless; something appellate courts will not

do.  See, e.g., Palm Beach Cty. Canvassing Bd. v. Harris, 772 So. 2d 1273, 1286 (Fla.

2000) (holding that "[c]ourts should construe statutes to give effect to all provisions, and

---

[1]Because the issuance of a tax certificate is a prerequisite to the issuance
of a tax deed, see § 197.502, a lien surviving the issuance of a tax deed must
necessarily have survived the issuance of a tax certificate.

not to render any part meaningless"); <u>Lewis v. City of Tampa</u>, 64 So. 3d 143, 145 (Fla. 2d DCA 2011); <u>Stratton v. Sarasota County</u>, 983 So. 2d 51, 55 (Fla. 2d DCA 2008) (citing <u>Am. Home Assurance Co. v. Plaza Materials Corp.</u>, 908 So. 2d 360, 366 (Fla. 2005); and <u>Unruh v. State</u>, 669 So. 2d 242, 245 (Fla. 1996)).  Rather than continuing to apply the now-outdated <u>Kostecos</u> construct, this court will instead enforce the trial court's resolution, which comports with the entire statutory scheme enacted by the legislature and permits the Tax Collector to issue tax certificates subject to the Villages' liens.

Third, we conclude that continuing to follow the <u>Kostecos</u> construct would be directly contrary to the legislature's directive that the competing liens be considered coequal.  Under the <u>Kostecos</u> construct, the first lienholder to foreclose is vested with the power to hold the other lien in abeyance until such time as the first lienholder decides to sell the property.  But if the liens are truly coequal, one coequal lienholder should not be able to force the other coequal lienholder to wait until the first lienholder acts.  To do so is to improperly subjugate the second lienholder's lien to the first lienholder's whims—the very antithesis of a status of coequal.  Thus, the <u>Kostecos</u> construct appears to conflict with the current statutory scheme, leading us to question whether it remains good law.

In sum, we hold that while the trial court improperly determined that the County's liens were superior to those of the Villages, it properly authorized the Tax Collector to issue tax certificates that will be subject to the Villages' assessment liens. Therefore, we affirm the trial court's ruling to this extent.  <u>See Robertson v. State</u>, 829 So. 2d 901, 906 (Fla. 2002) (explaining the "longstanding principle of appellate law" that

the appellate court may "affirm a trial court that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record' " (quoting Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999))).

Moreover, given the current volume of foreclosure litigation and the questionable viability of Kostecos in light of subsequent legislative enactments, we certify the following question to the Florida Supreme Court as being one of great public importance:

> WHEN A COUNTY HOLDS AN AD VALOREM TAX LIEN AGAINST PROPERTY AND A COMMUNITY DEVELOPMENT DISTRICT (CDD) FORECLOSES ON A COEQUAL ASSESSMENT LIEN ON THE SAME PROPERTY WITHOUT JOINING THE COUNTY IN THE FORECLOSURE ACTION, MAY THE COUNTY ISSUE A TAX CERTIFICATE ON THE PROPERTY SUBJECT TO THE CDD ASSESSMENT LIEN OR IS THE COUNTY'S TAX LIEN HELD IN SUSPENSION UNTIL THE CDD SELLS THE PROPERTY TO A THIRD PARTY PURSUANT TO KOSTECOS V. JOHNSON, 85 SO. 2D 594 (FLA. 1956)?

Affirmed; question certified.

SLEET and LUCAS, JJ., Concur.